UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS C. CROWLEY,

     Plaintiff,

v.                        CASE No. 8:11-CV-249-T-23TGW

OSI RESTAURANT PARTNERS,
LLC, et al.,

     Defendants.

_____

O R D E R

The plaintiff, Dennis C. Crowley, brought this lawsuit alleging that defendants OS Restaurant Services, Inc. and Outback Steakhouse of Florida, LLC (collectively "Outback" or "defendants") terminated his employment on the basis of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. 621 et seq., and the Florida Civil Rights Act of 1992 ("FCRA"), Ch. 760, Fla. Stat.  Crowley also asserts that Outback breached his employment agreement by terminating him without cause.

Outback has filed a motion for summary judgment on all counts of the amended complaint (Doc. 76). Viewing the evidence in the light most favorable to Crowley, there are genuine issues of material fact regarding whether his termination was due to age discrimination. Therefore, Outback's motion for summary judgment will be denied.

I.

Crowley, who was 62 years old when terminated, worked for Outback from 1990 until August 2009 (Doc. 19, ¶¶60, 74-75; Doc. 90, ¶4). Outback operates a chain of Australian-themed restaurants, which are committed to delivering "serious food" and "concentrated service" (Doc. 76, p. 2).

At the time of his termination, Crowley was the managing partner of the Outback restaurant on Fourth Street in St. Petersburg, Florida (Doc. 19, ¶¶38, 61). Crowley initially reported directly to Jim Pollard, who was a joint venture partner and then a regional joint venture partner. Beginning in December 2006, however, Crowley was supervised by Pam Murphy, a joint venture partner. Murphy reported to Pollard until his resignation in January 2008. Thereafter, Murphy reported to Bowen Eason,

-2-

a regional vice president.  Eason reported to the senior vice president of operations, Steve Erickson.

As a managing partner, Crowley was responsible for the management and training of employees, the profitability of the restaurant, and meeting Outback's standards for "serious food" and "concentrated service" (see Doc. 89, ¶5).  A managing partner ensures that his restaurant is selling "serious food" by performing line checks, labeling food items with an expiration date and disposing of expired food, and adhering to Outback's recipes (Doc. 76, pp. 2-3; Doc. 89, ¶¶8-10).  "Concentrated service" involves training and feedback for employees and customer satisfaction (Doc. 76, p. 3; Doc. 89, ¶¶11-12).

In August 2007, Crowley entered into the last of several employment agreements with Outback (Doc. 19-1).  The agreement provided Crowley with a term of employment until August 2012, subject to early termination for cause (id., ¶1).  With respect to "cause," the agreement states, in pertinent part (id., ¶8(c)(i)) (emphasis in original):

> Failure of the Employee to perform the duties required of the Employee in this Agreement in a manner satisfactory to the Employer, in its sole discretion; ***provided, however,*** that the Term of

> Employment shall not be terminated pursuant to this **subparagraph (i)** unless the Employer first gives the Employee a written notice ("Notice of Deficiency"). The Notice of Deficiency shall specify the deficiencies in the Employee's performance of the Employee's duties. The Employee shall have a period of thirty (30) days, commencing on receipt of the Notice of Deficiency, in which to cure the deficiencies contained in the Notice of Deficiency. In the event the Employee does not cure the deficiencies to the satisfaction of the Employer, in its sole discretion, within such thirty (30) day period ... the Employer shall have the right to immediately terminate the Term of Employment....

Crowley alleges that, as a managing partner, he was a top performer in the Tampa region (Doc. 19, ¶63). He states that he "repeatedly won awards and commendations for his superior performance. He was consistently recognized for having the top TCI (total controllable income), the best food costs and the best liquor costs" (id., ¶64). Pollard testified that Crowley won the partner of the year award multiple times (Doc. 87, pp. 98-100).

According to Murphy, however, Crowley's performance began to decline in 2008 (Doc. 89, ¶14). Although she counseled Crowley on ways to improve, Murphy received several complaints from Outback executives

about their experiences at the Fourth Street Outback during 2008 and 2009 (id., ¶¶14, 16). In addition, Crowley's restaurant received "many" customer complaints regarding the quality of food and service (id, ¶18).

Around April 2009, Murphy asked Amanda King, a former service tech, to keep notes regarding Crowley's mistakes, "no matter how minor ... even if the error was as minute as a burnt out light bulb" (Doc. 95-9, ¶7). King states that Murphy told her that she (Murphy) needed support for placing Crowley on a 30-day notice (id.).

The record indicates that Murphy may have made some comments regarding Crowley's age. King testified that, around the same time Murphy asked her to take notes on Crowley, Murphy began asking if Crowley was "too old to do the job," and stating that she thought Crowley was "too old to do the job" (Doc. 85, pp. 41-42). Julie Guenther, Murphy's former assistant, states that Murphy referred to Crowley as an "old dinosaur" (Doc. 84, p. 23). Finally, Tyre Weaver, a former food tech, testified that Murphy said Crowley was "just getting old" (Doc. 88, p. 104). Murphy, however, denies that she made any of these statements (Doc. 86, p. 170).

Murphy evaluated Crowley's performance in May 2009 (Doc. 86-29; Doc. 89, ¶20).   At that time, Murphy indicated that Crowley had strengths in staff accountability, serious food and drink, and immaculate standards, but he needed improvement with respect to communicating with impact, building partnerships, and achieving profitability (Doc. 86-29, p. 3). Murphy again counseled Crowley on ways to satisfy Outback's standards (Doc. 89, ¶20).   However, Crowley "failed to improve to [Murphy's] satisfaction" (id., pp. 5-6).

Murphy spoke with both Erickson and Eason regarding her concerns with Crowley's performance (Doc. 86, pp. 71-73, 78). During these conversations, Erickson and Eason asked Murphy if she had considered giving Crowley a 30-day notice (id.).

On July 17, 2009, Murphy issued a notice of deficiency to Crowley, noting problems in the areas of (1) training and development of management and staff; (2) kitchen operations and food quality; (3) leadership; (4) maintaining appropriate staffing; and (5) customer service (Doc. 76, p. 6; Doc. 86-15). In addition, Murphy provided Crowley with a more detailed list of deficiencies (Doc. 86-14; Doc. 89, ¶21).

Crowley posted the list of deficiencies on his office wall, and he reviewed it with Joseph DiSanto, his administrative assistant (Doc. 95-4, ¶9). DiSanto crossed off items on Murphy's list as they were completed, and he states that he handled "many of the items" himself (id., ¶¶16, 19). DiSanto further states that every item was crossed off of the list by the end of the 30-day period (id., ¶22).

Murphy inspected the Fourth Street Outback multiple times after issuing the notice of deficiency (Doc. 89, ¶22). According to DiSanto, Murphy performed a "final walk through" during one of his shifts at the end of the 30 days (Doc. 95-4, ¶23). Murphy reviewed the deficiency list at that time, and she told DiSanto that they "had accomplished everything on her list and that Crowley was off the 30-day" (id.). Pollard also spoke with Murphy a few days before the end of the 30-day period; he testified that Murphy told him Crowley "was going to make it" (Doc. 87, p. 131).

On August 20, 2009, after the 30-day period had ended, Murphy, Eason, regional director of training Billy Gregory, and Weaver conducted a line check at Crowley's restaurant (Doc. 76, p. 7). Murphy asserts that the line check revealed continued deficiencies, including several expired,

-7-

undated, and improperly prepared food items (Doc. 89, ¶23). She states that, after this line check, she decided that Crowley had failed to cure the problems identified in the notice of deficiency (id., ¶24).

Murphy terminated Crowley's employment with Outback on August 21, 2009 (id.). The reason given for the termination was Crowley's failure to cure his performance deficiencies to Murphy's satisfaction (id.; Doc. 86-1, p. 304). Murphy replaced Crowley with Sean Gerrard, who was 36 years old (Doc. 94, pp. 5-6).

DiSanto spoke with Murphy the day after Crowley was terminated (Doc. 80, pp. 63-65). He describes Murphy as upset and remembers her stating that "there was nothing she could do about it" and "it wasn't her decision" to fire Crowley (id., pp. 64-65).

After learning of Crowley's termination, Pollard called Murphy to find out what happened (Doc. 87, p. 153). Pollard testified that Murphy said there were issues with Crowley's performance, and Eason and Erickson told her that "it was either her or [Crowley]" and that "she needed to go younger" (id., pp. 155-58).

Crowley brought this action alleging claims of age discrimination and breach of contract against Outback (Doc. 19). Specifically, Crowley asserts that Outback improperly terminated him because of his age, in violation of both the ADEA and the FCRA. Crowley further claims that Outback breached his employment agreement by terminating him without "cause."

Thereafter, Outback filed a motion for summary judgment on all counts, arguing that it terminated Crowley due to performance deficiencies (Doc. 76). The motion is supported by numerous exhibits and affidavits (Docs. 77-91). Crowley replied and also submitted supporting documents (Docs. 94-95).

The motion was referred to me for disposition if denied, or for a report and recommendation if granted (Doc. 96). Subsequently, oral argument was heard on the motion.

## II.

Rule 56(a), F.R.Civ.P., provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Material facts are those over which disputes "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

Where the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991). Alternatively, the movant may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 1438. If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id. at 1437.

Where the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material

-10-

issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. United States v. Four Parcels of Real Property, supra, 941 F.2d at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v. Bridgestone/Firestone, Inc., supra, 989 F.2d at 469. Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

## III.

Outback argues that it is entitled to summary judgment on Crowley's age discrimination claims, alleging that it terminated Crowley's employment due to performance deficiencies (Doc. 76, pp. 20-35). Crowley responds that Outback's proffered reason for his termination is mere pretext for age discrimination (Doc. 94, pp. 6-26).

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[1] 29 U.S.C. 623(a)(1). A plaintiff raising a claim under the ADEA must show that "age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 176 (2009). That is, the plaintiff must prove "that age was the 'reason' that the employer decided to act." Id. Proof of discrimination may be established with either direct or circumstantial evidence. Mora v. Jackson Memorial Foundation, Inc., 597 F.3d 1201, 1204 (11th Cir. 2010).

A. Crowley argues that he has presented direct evidence of age discrimination (Doc. 94, pp. 24-26). In this regard, Crowley points to the following remarks: (1) Murphy asked King if Crowley was "too old to do the job," and said that she thought Crowley was "too old to do the job" (Doc. 85, p. 41); (2) Murphy told Weaver that "[Crowley's] just getting old" (Doc. 88, p. 104); (3) Murphy referred to Crowley as an "old dinosaur" (Doc. 84, p. 23);

---

[1]The FCRA also makes it unlawful for an employer to discharge or discriminate against an employee based on age. Fla. Stat. 760.10(1)(a). Claims of age discrimination under the FCRA are analyzed using the same standard as ADEA claims. Zaben v. Air Products & Chemicals, Inc., 129 F.3d 1453, 1455 n.2 (11th Cir. 1997).

and (4) Eason and Erickson told Murphy that "it was either her or [Crowley]" and that "she needed to go younger" (Doc. 87, pp. 155-58).

Direct evidence of discrimination is evidence which establishes discriminatory intent without inference or presumption. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." Id. (quotation omitted). Therefore, comments made by non-decision makers or statements that are not related to the decision-making process are not direct evidence. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Furthermore, "[e]vidence that only suggests discrimination ... or that is subject to more than one interpretation ... does not constitute direct evidence." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997) (internal citations omitted).

In this case, none of the comments proffered by Crowley constitutes direct evidence of discrimination. References to "getting old," being an "old dinosaur," and "go[ing] younger" are not directly related to the

Crowley's termination.[2]   Thus, although some of these statements may arguably suggest discriminatory animus, none are blatant remarks from which employment discrimination can be found without the aid of an inference. See, e.g., Ritchie v. Industrial Steel, Inc., 426 Fed. Appx. 867, 871-72 (11th Cir. 2011) (decision maker's references to plaintiff as an "old man" were not direct evidence because they were unrelated to the termination decision); Hollins v. Fulton County, 422 Fed. Appx. 828, 831 (11th Cir. 2011) (finding statement by employer that he "was going to 'get rid of all of you old people who have been here a long time that don't want to do your job'" was not direct evidence because it was subject to more than one interpretation and seemingly directed at employees with performance issues); Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1359 (11th Cir. 1999) (decision maker's comment that "what the company needed was aggressive young men like [the replacement] to be promoted" did not constitute direct evidence of discrimination).

---

[2]Notably, the record indicates that Crowley jokingly called himself a "dinosaur" when referring to his tenure in the restaurant industry (Doc. 80, p. 68).

B. Alternatively, Crowley asserts that he has proven a circumstantial case of age discrimination through the test set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3]  Under the McDonnell Douglas approach, the plaintiff must first establish a prima facie case of discrimination by showing (1) he is a member of the protected class, (2) he suffered an adverse employment decision, (3) he was qualified to perform the job, and (4) he was replaced by or lost a position to a younger person. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).  If the plaintiff makes such a showing, the defendants have the exceedingly light burden of producing some legitimate, non-discriminatory reason for their decision. Id. Upon such a production, the plaintiff has the burden of showing that the proffered reasons for the employment action are merely a pretext for unlawful discrimination. Id. at 1024-25.

Moreover, a plaintiff is not required to establish the elements of the McDonnell Douglas test in order to survive a summary judgment motion

---

[3]In Gross v. FBL Financial Services, Inc., the Supreme Court stated that it "has not definitively decided whether" the McDonnell Douglas framework "is appropriate in the ADEA context." 557 U.S. at 175 n.2. However, the Eleventh Circuit continues to analyze ADEA claims under this framework. See Horn v. United Parcel Services, Inc., 433 Fed. Appx. 788 (11th Cir. 2011).

in an employment discrimination case. <u>Smith</u> v. <u>Lockheed-Martin Corp.</u>, 644 F.3d 1321, 1328 (11th Cir. 2011). Rather, the plaintiff will defeat summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. <u>Id</u>. "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" <u>Id</u>. (footnote omitted).

In this case, Outback does not dispute that Crowley has established a prima facie case of age discrimination under the <u>McDonnell Douglas</u> test, which is understandable since 62-year-old Crowley was terminated and replaced by a 36-year old (<u>see</u> Doc. 76, p. 24). Accordingly, the burden shifts to Outback to articulate a legitimate, nondiscriminatory reason for Crowley's termination. In this connection, Outback states that it terminated Crowley's employment for unsatisfactory performance, specifically "Crowley's inability to meet Outback's operational standards for 'concentrated service' and 'serious food' despite multiple warnings before his notice of deficiency and during his 30-day cure period" (<u>id</u>., p. 28).

Furthermore, the defendants have supported this contention with voluminous submissions. Consequently, Crowley has the burden of showing that this reason is a mere pretext for unlawful age discrimination.

In this case, there is evidence that Crowley corrected the deficiencies on the 30-day notice. That evidence at least creates a material dispute of fact whether Crowley was terminated due to performance inadequacies or whether that reason was a pretext for his dismissal. Consequently, summary judgment cannot be based on performance deficiencies as reflected in the 30-day notice.[4]

To amplify, Crowley has raised a factual dispute as to whether he cured the deficiencies identified by Murphy during the 30-day period (Doc. 94, pp. 20-21). In an affidavit, DiSanto, who was the plaintiff's administrative assistant, averred that he worked with Crowley to correct the

---

[4]The defendants cannot plausibly argue that Crowley was terminated for deficiencies that were not included in the 30-day notice. In the first place, the employment contract required the defendants to specify the deficiencies in the 30-day notice before termination. Further, if the deficiencies were not serious enough to include in the 30-day notice, they would not reasonably be serious enough to warrant termination. In any event, Murphy testified that Crowley "was terminated for the failure of the lack of deficiencies in everything that I asked him to do within the 30 days" (Doc. 86-1, p. 304; see also id., p. 329).

deficiencies on the list, which was posted on the wall in Crowley's office. DiSanto stated that "[n]ear the end of the 30-day period, we had crossed every item off Ms. Murphy's list" (Doc. 95-4, ¶22). He stated further that Murphy told him that every item on the list had been corrected, and Crowley was "off the 30-day" (id., ¶23). In addition, Pollard testified that, a few days before the end of the 30-day period, Murphy told him that Crowley "was going to make it" (Doc. 87, p. 131). Although Murphy denies making such statements (Doc. 86, p. 106), this dispute creates a genuine issue of material fact for the fact-finder to determine.

The defendants also seem to make the subsequent food line check part of the performance review. However, they do not argue that the result of the food line check, standing alone, is a basis for termination. In this respect, Murphy indicated in her deposition that a bad food line check by itself would not warrant a discharge if all the matters on the 30-day list had been taken care of (id., pp. 110-11). As previously indicated, there is a genuine dispute of fact whether those matters had been remedied. In light of that circumstance, the defendants do not appear to contend that the food line check alone justifies Crowley's dismissal.

-18-

Regardless, there is a genuine dispute of fact whether the food line check was legitimate. The plaintiff argues that the food line check "Was a Set-Up" (Doc. 94, p. 21). There was evidence from which a fact-finder could conclude that the food line check was an attempt to contrive a basis for terminating Crowley and was not a fair and honest evaluation of his abilities.

Some context for this point is provided by the affidavit of King, who, as Murphy's service tech from late 2006 until April 2009, inspected the front of house operations in all nine of Murphy's stores. King stated (Doc. 95-9, ¶7):

> Just prior to my resignation in April 2009, Ms. Murphy asked me to trump up my critical review notes on Crowley. Ms. Murphy told me that if Crowley made any mistake, no matter how minor, she wanted me to record it in my review notes. Ms. Murphy said to do so, even if the error was as minute as a burnt out light bulb. Ms. Murphy stated she needed support for putting Mr. Crowley on a 30-day.

The 30-day notice was given to Crowley on July 17, 2009. The food line check at issue was conducted on August 20, 2009. That is four days after the 30-day period had ended. While the plaintiff argues that the end of

Case 8:11-cv-00249-SDM-TGW  Document 103  Filed 12/04/12  Page 20 of 25 PageID 3164

the 30-day period required a determination on that day, that argument does not seem to be a reasonable interpretation of the contract.

On the other hand, Pollard testified that the practice and the corporate teaching was to make the termination decision on the thirtieth day (Doc. 87, pp. 138-39). That practice was not followed here. The failure to follow that practice supports the inference that the food line check was added as a test because the plaintiff had corrected the deficiencies on the 30-day notice. That inference is greatly strengthened by the testimony of Weaver concerning the test.

Weaver, who supervised the food and kitchens in the nine restaurants overseen by Murphy, was present during the food line check. Notably, also present were Billy Gregory, the regional director of training; Eason, the regional vice president; and Murphy, thereby making a strong showing by executives for a task that would normally be done just by Crowley and DiSanto. Weaver said that "they were a lot harder than I had ever seen Billy be on anybody" (Doc. 88, p. 96). Weaver had the impression that Murphy, Eason, and Gregory "were trying to find problems with the line check" (id., pp. 155-56). Weaver said that Crowley was doing a sufficient job

of holding his kitchen staff accountable, adding "I don't think he should have even been on a 30-day at that time" and that "[t]here were much worse problems out there" (id., p. 97). He then identified two of the nine stores that were worse (id., pp. 102-03).

Moreover, there is evidence that food line checks were not a particular problem of Crowley's. Thus, DiSanto averred that he "personally knew that the line checks were, in fact, being completed daily" and that "it was done correctly" (Doc. 95-4, ¶12). And what is especially significant is that in Crowley's May 2009 evaluation, Murphy wrote the following in the category of Top 3 Strengths: "GREAT ... line checks done daily" (Doc. 86-29, p. 3).

The plaintiff therefore has adduced evidence that creates a genuine dispute of fact whether he was terminated due to deficient performance. Thus, there is evidence from which a fact-finder could conclude that the items on the 30-day list had been corrected. Moreover, although it does not appear that the defendants are contending that the food line check on August 20, 2009, by itself, provides a basis for termination, even if they were, there is evidence from which a fact-finder could conclude

-21-

that the food line check was not honestly conducted. In fact, evidence that the check was not legitimately done could support the inference that the defendants were trying to get rid of Crowley.

Finally, the age-related statements permit the inference that the defendants were trying to get rid of Crowley due to his age. In particular, Murphy told Pollard near the end of the 30-day period that Crowley "was going to make it" (Doc. 87, p. 131). However, Murphy and Pollard spoke again after the plaintiff's termination and, according to Pollard, Murphy said that Eason and Erickson told her "it was either her or [Crowley]" and that "she needed to go younger" (id., pp. 155-58). In addition, King testified that Murphy said to her, "I think he's too old to do the job" (Doc. 85, p. 41). Moreover, Murphy said to Weaver that Crowley's "just getting old" (Doc. 88, p. 104) and has dismissed him "as just being an old dinosaur" (Doc. 84, p. 24). This evidence would permit a fact-finder to conclude that the plaintiff was terminated due to his age.

For these reasons, Crowley has proffered sufficient evidence to raise a genuine dispute of fact whether his age, rather than his performance,

was the real reason for his termination. Therefore, the defendants are not entitled to summary judgment on the issue of age discrimination.

IV.

The defendants also move for summary judgment on Crowley's breach of contract claim (Doc. 76, pp. 9-19). In his amended complaint, Crowley asserts that the defendants breached his employment agreement by terminating him without cause (Doc. 19, pp. 18-19). With respect to "cause," the agreement states, in pertinent part (Doc. 19-1, ¶8(c)(i)) (emphasis in original):

> Failure of the Employee to perform the duties required of the Employee in this Agreement in a manner satisfactory to the Employer, in its sole discretion; *provided, however,* that the Term of Employment shall not be terminated pursuant to this **subparagraph (i)** unless the Employer first gives the Employee a written notice ("Notice of Deficiency"). The Notice of Deficiency shall specify the deficiencies in the Employee's performance of the Employee's duties. The Employee shall have a period of thirty (30) days, commencing on receipt of the Notice of Deficiency, in which to cure the deficiencies contained in the Notice of Deficiency. In the event the Employee does not cure the deficiencies to the satisfaction of the Employer, in its sole discretion, within such thirty (30) day period ... the Employer

shall have the right to immediately terminate the
Term of Employment....

According to the defendants, the standard for analyzing an
alleged breach of an employment contract containing sole-discretion language
is whether the employer acted in good faith (Doc. 76, p. 10). In Florida,
"good faith" is defined as "honesty, in fact, in the conduct of contractual
relations." Harrison Land Development, Inc. v. R and H Holding Co., Inc.,
518 So.2d 353, 355 (Fla. App. 1987).

The defendants argue that the performance deficiencies
identified by Murphy constituted sufficient "cause" for Crowley's termination
(Doc. 76, pp. 9-16). Moreover, the defendants contend further that they acted
in good faith in determining that Crowley's unsatisfactory performance
warranted a 30-day notice, and that he failed to cure his performance
deficiencies (id., pp. 12-16).

As indicated, however, Crowley has raised a genuine dispute
regarding the reason for his termination. If the defendants terminated
Crowley because of his age, then they did not act in good faith. Thus, as
Crowley persuasively argues, "[b]ecause the evidence in this case creates a

-24-

substantial dispute of fact as to whether Outback acted in 'good faith,' and whether the reasons proffered by Outback for Crowley's termination were false, summary judgment cannot be granted" (Doc. 94, p. 28).

V.

Since genuine disputes of material fact exist as to the reason for Crowley's termination, Outback is not entitled to summary judgment on any of Crowley's claims.

It is, therefore, upon consideration

ORDERED:

That Defendants' Motion for Summary Judgment (Doc. 76) be, and the same is hereby **DENIED**.

DONE and ORDERED at Tampa, Florida, this ___ day of December, 2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE
